**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____. |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

I. FACTUAL BACKGROUND .........................................................................................2

    A. The Parties ..........................................................................................................2

    B. Petitioner's Encounter With British Police.........................................................3

    C. Respondents Make Enquiries About The Arrest And The Forged Police Report....................................................................................................................4

    D. Respondents' Publication Of Article Disseminating Forged Police Report...........6

    E. Petitioner Uncovers, And British Police Confirm, That Report Is Fake ................7

    F. Petitioner's Contemplated Proceedings .............................................................9

    G. Respondents Possess Highly Material Information Concerning The Forger.........11

II. ARGUMENT ................................................................................................................12

    A. Legal Framework ..............................................................................................12

    B. Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782. ................14

        1. Respondents Are "Found" In The Southern District Of New York. .........14

        2. The Discovery Sought Is For Use In Foreign Proceedings.......................14

        3. Petitioner Is An "Interested Person." .........................................................17

    C. All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks. .....................................................18

        1. The First *Intel* Factor Favors Granting Discovery....................................18

        2. The Second *Intel* Factor Favors Granting Discovery. ..............................19

        3. The Third *Intel* Factor Favors Granting Discovery. .................................20

        4. The Fourth *Intel* Factor Favors Granting Discovery.................................21

III. CONCLUSION..............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Assurances Sur La Vie v. Kraus*,
 62 F. Supp. 3d 358 (S.D.N.Y. 2014) ........................................................................ 16

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
 No. 17-MC-00216(VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .............................. 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
 673 F.3d 76 (2d Cir. 2012) ............................................................ 12, 13, 16, 19

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
 613 F. App'x 319 (5th Cir. 2015) .......................................................................... 15

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
 798 F.3d 113 (2d Cir. 2015) ............................................................................... 17

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ......................................................................................... 14

*Euromepa S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095 (2d Cir. 1995) .......................................................................... 13, 19

*Hertz Corp. v. Friend*,
 559 U.S. 77, 93 (2010) ..................................................................................... 14

*In re Accent Delight Int'l Ltd.*,
 869 F.3d 121 (2d Cir. 2017) ............................................................................... 16

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
 121 F.3d 77 (2d Cir. 1997) ........................................................................... 13, 20

*In re Application of OOO Promnesftstroy*,
 No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) ................................... 18

*In re Bayer AG*,
 146 F.3d 188 (3d Cir. 1998) ............................................................................... 21

*In re Catalyst Managerial Servs., DMCC*,
 680 F. App'x 37 (2d Cir. 2017) .......................................................................... 16

*In re Children's Inv. Fund Found. (UK)*,
 363 F. Supp. 3d 361 (S.D.N.Y. 2019) .................................................................. 16

*In re Edelman*,
 295 F.3d 171 (2d Cir. 2002) ............................................................................... 13

*In re Ex Parte Application of SERETM*,
    2013 WL 6141655 (N.D. Cal. Nov. 21, 2013) ............................................................. 17, 21

*In re Furstenberg Fin. SAS*,
    No. 18-MC-44(JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) .................................... 15

*In re Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018) ....................................................................................... 15

*In re Kiobel*,
    2017 WL 354183 (S.D.N.Y. Jan 24, 2017) ....................................................................... 15

*In re Mangouras*,
    No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ........................................... 14

*In re: Application of Bracha Found.*,
    663 F. App'x 755 (11th Cir. 2016) ................................................................................. 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ........................................................................................... passim

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ........................................................................................ 17

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
    62 F. Supp. 3d 358 (S.D.N.Y. 2014) ............................................................................. 16

*Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*,
    No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ................................................ 14

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................................................ 14

## <u>Statutory Authorities</u>

28 U.S.C. § 1782 ............................................................................................. passim

Shervin Pishevar ("Petitioner"), respectfully submits this Memorandum of Law in support of his Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain limited discovery from Fast Company and Mansueto Ventures LLC ("Mansueto," and together with Fast Company, the "Respondents"), in the form of the attached subpoenas *duces tecum* (the "Subpoenas") (the "Application").[1]

## PRELIMINARY STATEMENT

This Application arises from the forgery of a British police report ("Forged Police Report") that was subsequently used in an article published by Respondents—despite being told by the British police that the report is fake. The article, which likely encouraged other publications to further disseminate the contents of the Forged Police Report, caused Petitioner to suffer irreparable harm to his reputation and standing. By their own admission, Respondents have obtained a copy of the Forged Police Report and it is therefore nearly certain that they have possession, custody, or control of information sufficient to identify the author(s) and/or distributor(s) of the Forged Police Report (the "Forger" or "Forgers"). Petitioner brings this Application to obtain that information for use in contemplated civil and criminal proceedings in England against the Forger(s) ("Contemplated English Proceedings").

This Application meets all of the requirements of Section 1782. Respondents reside or are found in this district because they are headquartered here. The discovery sought by the Petitioner is relevant to the issues at stake in the Contemplated English Proceedings.

---

[1] The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated August 5, 2019 ("Bento Decl.").

Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel* decision favor the discovery sought by Petitioner.  Accordingly, the Petitioner respectfully requests that the Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas on Respondents.

## I.      FACTUAL BACKGROUND

### A.      The Parties

*Shervin Pishevar.*  Shervin Pishevar is a venture capital investor, entrepreneur and philanthropist.[2]  He is the co-founder of Sherpa Capital, a leading venture capital firm.  He was chosen by the U.S. Government as an "Outstanding American by Choice", one of the only 100 naturalised Americans to be so chosen since the inception of the award.[3]

*Mansueto Ventures LLC.*  Mansueto Ventures LLC is the publisher of Fast Company.[4]  Upon information and belief, Mansueto is incorporated in Delaware and headquartered at 7 World Trade Center, New York, NY.[5]

*Fast Company.*  *Fast Company* is a magazine founded in 1995 with an editorial focus on innovation in technology, leadership, world changing ideas, creativity, and design.[6]  Upon information and belief, the magazine is headquartered at 7 World Trade Center, New York, NY.  Upon information and belief, Fast Company is a fictitious business name and/or brand operated and owned by Mansueto and does not maintain distinct legal personality.  Fast Company published the article that references and makes use of the

---

[2] Watson Decl. ¶9; Macdonald Decl. ¶8.
[3] Macdonald Decl. ¶8.
[4] Bento Decl., Ex. 7.
[5] Bento Decl., Exs. 3, 8.
[6] Bento Decl., Ex 5.

contents of the Forged Police Report.[7]  Marcus Baram, Senior Editor at Fast Company, authored the article.[8]

### B.     Petitioner's Encounter With British Police

On May 27, 2017, the Petitioner had consensual sexual intercourse at a hotel in London.[9]  Later that day, the Petitioner was woken by police officers in his hotel room and arrested by City of London Police ("COLP") on suspicion of sexual assault.[10]  The arrest was a total shock to the Petitioner, who was understandably distressed and traumatized by it.[11]  The Petitioner was released on bail on May 28, 2017 and on July 28, 2017 the COLP confirmed to the Petitioner that they would be taking no further action against him due to insufficient evidence.[12]

On August 1, 2017, COLP released a press statement which stated: "Following an investigation into a report of a rape at a location on Poultry, EC2 [London] on Saturday 27 May 2017, we can confirm that no further action will be taken.  A 43-year-old man from San Francisco was initially arrested on suspicion of rape before being released under investigation".[13]  The Petitioner was not named and as per the press statement on August 1, 2017, COLP announced the investigation had ended.[14]

---

[7]  Watson Decl.¶19, Ex. 4.  Petitioner has not attached a copy of the Forged Police Report to this application to minimize further dissemination of the forged document.  However, Petitioner is prepared to promptly provide a copy of the Forged Police Report to the court for *in camera* review.
[8]  Watson Decl., Ex. 4; Bento Decl. Ex. 6.
[9]  Watson Decl.¶10.
[10]  Watson Decl.¶11.
[11]  Watson Decl.¶11.
[12]  Watson Decl.¶12.
[13]  Watson Decl.¶14.
[14]  Watson Decl.¶14.

### C.      Respondents Make Enquiries About The Arrest And The Forged Police Report

On or around October 13, 2017, Marcus Baram—Senior Editor at Fast Company—contacted the COLP press team to enquire further about Petitioner's arrest.[15]   COLP responded that the investigation into the arrest was no longer ongoing and as such no further action would be taken.[16]   On October 15, 2017, Mr. Baram contacted COLP again, this time to ask whether they would confirm it was the Petitioner that was arrested.[17]   The following day COLP responded that, as per COLP policy, they could neither confirm nor deny any name's connection with an arrest.[18]   At the same time, COLP also confirmed that the investigation was not being reviewed and would not be reopened.[19]

On October 18, 2017, Mr. Baram emailed COLP attaching a copy of what he claimed to be a police report that he had obtained which named the Petitioner and, as subsequently confirmed by COLP, which contained false information (the "Forged Police Report").[20]   Due to the fraudulent details contained in the Forged Police Report, anyone who read it would wrongly associate Petitioner with disreputable or notorious conduct.[21] Mr. Baram requested that COLP confirm whether the Forged Police Report was authentic.[22]   Upon receipt of the Forged Police Report, COLP conducted an internal

---

[15]  Watson Decl.¶15.
[16]  Watson Decl.¶15.
[17]  Watson Decl.¶15.
[18]  Watson Decl.¶15.
[19]  Watson Decl.¶15.
[20]  Watson Decl.¶16.
[21]  Watson Decl.¶16.
[22]  Watson Decl.¶16.

investigation into its authenticity.[23]  In an email dated October 23, 2017, COLP emailed Mr. Baram to confirm that following their investigation, inaccuracies in the Forged Police Report led them "to believe it is false".[24]

On October 24, 2017, COLP produced a report, which stated that it was "unlikely" that the Forged Police Report had been created within COLP or leaked by COLP to the media.[25]  Thereafter, on or around October 24, 2017, COLP confirmed to Mr. Baram and others that the report was a fake.[26]  In another email in response to Mr. Baram, dated October 31, 2017, COLP confirmed that Petitioner's case had not been reopened.[27]

On November 6, 2017, the Petitioner filed proceedings in the United States for a defamation action against another party ("U.S. Defamation Action").[28]  In the U.S. Defamation Action, the Petitioner, in voluntarily waiving his anonymity, also made reference to the untrue allegations of sexual assault which were being leaked to the media following his arrest.[29]  The Petitioner admitted to the arrest but denied the allegations of sexual assault.[30]  On November 7, 2017, Mr. Baram then contacted COLP again and, while referring to the U.S. Defamation Action, enquired whether they could provide further details.[31]  COLP again confirmed Petitioner's case had not been reopened and stated they had no further comment on the matter.[32]

---

[23]  Watson Decl.¶16.
[24]  Watson Decl.¶16.
[25]  Watson Decl.¶17.
[26]  Watson Decl.¶17.
[27]  Watson Decl.¶17.
[28]  Watson Decl.¶18.
[29]  Watson Decl.¶18.
[30]  Watson Decl.¶18.
[31]  Watson Decl.¶18.
[32]  Watson Decl.¶18.

**D.     Respondents' Publication Of Article Disseminating Forged Police Report**

Notwithstanding the fact that COLP communicated to Respondents that the Forged Police Report was false, on November 8, 2017, Fast Company published an article entitled "'Smear Campaign' or not tech investor Shervin Pishevar really was arrested earlier this year".[33]  The article noted that the "police report" was "seen by Fast Company".[34]  The article made reference to details contained in the Forged Police Report, including private information about the Petitioner as well as false information about the circumstances leading to the arrest.[35]  The article was wrongly afforded greater credibility because it referred to the details of the Forged Police Report.[36]

The following day, on November 9, 2017, more publications released articles referring to the contents of the Forged Police Report.  The NY Post published an article entitled "Billionaire ally of ex-Uber CEO busted on rape charge" which included details from the Forged Police Report, and referred to the Forged Police Report by stating "according to a police report obtained by The Post".[37]  Forbes published an article entitled "Shervin Pishevar, arrested but never charged over alleged rape, says he's a victim of 'smear campaign'" which stated "a copy of the police report obtained by Forbes, confirms the details of the arrest and the identity of the suspect".[38]

---

[33]  Watson Decl.¶19 & Ex. 4.
[34]  Watson Decl.¶19 & Ex. 4.
[35]  Watson Decl.¶19 & Ex. 4.
[36]  Watson Decl.¶19.
[37]  Watson Decl.¶20.
[38]  Watson Decl.¶20.

**E.      Petitioner Uncovers, And British Police Confirm, That Report Is Fake**

On November 9, 2017, Hickman & Rose, English criminal counsel for the Petitioner, contacted COLP to enquire whether any private information relating to the Petitioner had been disclosed to the media following the arrest.[39]  On November 10, 2017, COLP confirmed that no such disclosure had been made and Hickman & Rose responded with a request for a copy of the Forged Police Report.[40]  On November 13, 2017, COLP declined the request due to ongoing enquiries as to the purported commission of any criminal offences related to the Forged Police Report.[41]

In an email to COLP dated September 28, 2018, Hickman & Rose renewed their request for a copy of the Forged Police Report as well as confirmation as to the source that provided it to COLP.[42]  In a response dated October 25, 2018, COLP's in-house lawyer stated that they "can confirm that there is no criminal investigation in respect of the document in question.  The City of London Police is content for me to inform you that the screenshot of the document was supplied to them by Marcus Baram of Fast Company.  The City of London Police is not prepared to provide a copy of the screenshot without a court order requiring disclosure".[43]

On November 1, 2018, Hickman & Rose made a Subject Access Request (similar to a Freedom of Information request in the U.S.) to the COLP for the Forged Police

---

[39]  Watson Decl.¶21.
[40]  Watson Decl.¶21.
[41]  Watson Decl.¶21.
[42]  Watson Decl.¶23.
[43]  Watson Decl.¶23 & Ex 5.

Report.[44]  On April 4, 2019, Hickman & Rose subsequently made a disclosure application

to the English High Court seeking to compel the COLP to disclose the information that had

been requested.[45]  On May 29, 2019, the English High Court ordered the COLP to comply

with the request.[46]  On the same day, the COLP complied and provided a copy of the

Forged Police Report to Hickman & Rose.[47]  The COLP further confirmed via a signed

witness statement from Teresa La Thangue (its communications director) that the Forged

Police Report was fake:

> "2. On the 18 October 2017, Corporate Communications received **an email from Marcus Baram, a journalist, stating that <u>he had obtained the 'arrest report'</u>** in relation to matter that he had previously enquired about; a report of rape at the Ned Hotel on the 27 May 2017. I now produce marked "TLT/I" a copy of the said email.
>
> 3. In his email of the 18 October 2017, Marcus Baram asked us to verify that the document attached to his email was authentic. The attached document was a screenshot of what appeared to be an arrest report. I now produce marked "TLT/2" a copy of the attachment
>
> 4. The 'arrest report' was sent to the City of London Police's Professional Standards Directorate who were **able to confirm that the document was not a City of London Police document**.
>
> 5. Thereafter, **Marcus Baram was told, along with any other journalists who enquired, <u>that it was a fake</u>, explaining that it was not a document that is used by the City of London Police, and that the officer named does not work and has not worked for the City of London Police**."[48]

---

[44]  Watson Decl.¶24; Macdonald Decl. ¶15.
[45]  Macdonald Decl. ¶16; Watson Decl. ¶24.
[46]  Watson Decl. ¶25.
[47]  The copy was a screenshot of the purported Forged Police Report which had been sent by Mr. Baram to the COLP.
[48]  Macdonald Decl.,¶17 Ex. 4 (emphasis added); Watson Decl. ¶27.

These findings are further supported by Detective Sergeant Jonathan Witt (a COLP officer), who concluded in a report dated October 24, 2017 that the Forged Police Report was "not authentic".[49]  On June 11, 2019, the COLP provided additional documents to Petitioner, detailing the COLP's internal investigation into the Forged Police Report's authenticity as well as contact with media outlets following enquiries into the Petitioner's arrest.[50]  Whilst this information was helpful, it failed to assist the Petitioner in identifying the author or distributor of the Forged Police Report.[51]

### F.    Petitioner's Contemplated Proceedings

Petitioner has suffered considerable reputational harm as a result of the creation and dissemination of the lies contained in the Forged Police Report.   Accordingly, Petitioner contemplates initiating civil and criminal proceedings against the Forger(s) in the United Kingdom.[52]

***Contemplated Civil Proceedings.***    The Petitioner contemplates initiating civil proceedings against the author(s) and distributor(s) of the Forged Police Report.[53] Specifically, Petitioner intends to bring a claim of negligent misstatement against the Forger(s) on the theory that the Forger(s) of the Forged Police Report owed Petitioner a duty of care not to publish private information about him which they knew to be false, yet did so regardless, which information the media (and possibly others) have relied on,

---

[49]  Watson Decl. ¶26.
[50]  Watson Decl. ¶25.
[51]  Macdonald Decl. ¶18.
[52]  Watson Decl. ¶¶28-35; Macdonald Decl. ¶¶19-33.
[53]  Watson Decl. ¶28.

thereby causing Petitioner to suffer loss ("<u>Contemplated Civil Proceedings</u>").[54]  To this end, the Petitioner has retained English counsel to pursue civil claims in England & Wales, including (without limitation) negligent misstatement.[55]  English counsel has begun preparing pleadings to pursue these claims.[56]  While these claims may initially be brought against Persons Unknown (akin to John Doe defendants in the US), it would be more efficient and economical from the outset to initiate these proceedings against a named defendant(s).[57]

*Contemplated Criminal Proceedings*.  Petitioner seeks to initiate, either through public or private prosecutions,[58] criminal proceedings in England & Wales against the Forger for violations of the Forgery and Counterfeiting Act 1981, the Fraud Act 2006 and the Malicious Communications Act 1988 ("<u>Contemplated Criminal Proceedings</u>").[59]  As explained in the Declaration of Lord Macdonald of River Glaven Kt QC—the former Director of Public Prosecutions in England & Wales—the Forger has contravened Section 1-4 of the Forgery and Counterfeiting Act 1981 because in creating the Fake Report— plainly a false instrument under English law—the Forger, and any complicit copiers and users of the Fake Report, or any copies thereof, intended by their acts to harm, and actually harmed, Mr Pishevar.[60]  The Forger also contravened Sections 2, 6, and 7 of the Fraud Act

---

[54]  Watson Decl. ¶29.
[55]  Watson Decl. ¶29.
[56]  Watson Decl. ¶30.
[57]  Watson Decl. ¶38.
[58]  Under English law, a victim of a crime may initiate a private prosecution without police or State intervention. *See* Macdonald Decl. ¶31-32.
[59]  Macdonald Decl. ¶22-33.
[60]  Macdonald Decl. ¶22-23.

2006 under English law because the Forged Police Report was intended by the Forger to be perceived by its readers as a genuine police report; the implied assertion that it was genuine amounted to a false representation; the Forger knew this was a false representation; and their plain and inescapable intention in making this false representation was to cause loss to Mr. Pishevar.[61]  Similarly, the Forger contravened the Malicious Communications Act 1988 because when the Forger conveyed the report to others, he or she did so knowing it contained false information (because that information had been invented), and with full awareness that it would inevitably be drawn to Mr. Pishevar's attention (thus establishing the necessary intention under English law), with the equally inevitable result that Mr. Pishevar would be caused distress and anxiety.[62]  To this end, Petitioner has retained English counsel to pursue these claims, who have already begun preparing pleadings, including criminal summonses.[63]

G.   **Respondents Possess Highly Material Information Concerning The Forger**

The Fast Company article authored by Mr. Baram confirms that the magazine has "seen" the Forged Police Report.[64]  Mr. Baram, a Senior Editor of Fast Company, has also told British police that he "obtained" it.[65]  While Respondents have not explicitly indicated the provenance of the report, it self-evidently was obtained from somewhere.  Someone (likely the Forger) must have shared the Forged Police Report with Respondents. Respondents are therefore in possession and control of information highly material to the

---

[61]  Macdonald Decl. ¶24-26.
[62]  Macdonald Decl. ¶27-28.
[63]  Macdonald Decl. ¶19.
[64]  Watson Decl., Ex. 4; Macdonald Decl., ¶11 & Ex. 2.
[65]  Macdonald Decl., Ex. 4.

Contemplated English Proceedings.  This information, inter alia, relates to the identity and location of the Forger; the identity of any of the Forged Police Report's disseminators and/or distributors; and any other information relating to the provenance and falsity of the report—facts and issues that are critical to the Contemplated English Proceedings. Petitioner has no other way to uncover this information, thus rendering the discovery sought in this Application indispensable to the Contemplated English Proceedings.

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code ("Section 1782") permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding.  *Intel*, 542 U.S. at 259.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.
> 28 U.S.C. § 1782.

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Moreover, courts in this circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

13

**B.      Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.**

Petitioner satisfies the three statutory requirements of section 1782: (1) Respondents are "found" in the Southern District of New York; (2) the requested information is for use in the Contemplated English Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff and complainant in those foreign proceedings.

**1.      Respondents Are "Found" In The Southern District Of New York.**

Respondents are headquartered at 7 World Trade Center, New York, New York[66] and are thus "found" in this District for purposes of Section 1782. *Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (noting that a corporation is found in the district where it is "essentially at home"); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation *or its principal place of business*.") (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)) (emphasis added).

**2.      The Discovery Sought Is For Use In Foreign Proceedings.**

The information sought in the Subpoenas is "for use" in foreing proceedings.  In the Second Circuit, "[w]here an applicant has not yet initiated a foreign proceeding, [1782]

---

[66]   Bento Decl. Exs. 3-4.

discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims.  Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'"  *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (*citing Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1782 discovery is sought; it need only "be within reasonable contemplation.").  Here, Petitioner will use the identity of the Forger(s) to plead and prove his civil and criminal claims in the United Kingdom.[67]

Petitioner's Contemplated English Proceedings qualify as "foreign proceedings" for purposes of Section 1782.  A petitioner need only "provide some objective indicium that the action is being contemplated".  *In re Kiobel,* 2017 WL 354183, *3 (S.D.N.Y. Jan 24, 2017).  Here, the declarations of Petitioner's English lawyers that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings is objective evidence that Petitioner's "foreign proceeding" is "within reasonable contemplation."  *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (summary order) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was been met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal

---

[67]   Watson Decl. ¶¶37-38; Macdonald Decl. ¶¶34-35.

theory on which they intended to rely); *see also In re: Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was for use in a contemplated proceeding because, inter alia, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

The Contemplated English Proceedings qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782.  Indeed, numerous courts have found that civil proceedings before English courts satisfy Section 1782.  *See e.g. In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  With regard to the Contemplated Criminal Proceedings in particular, Section 1782(a) explicitly provides that the statute can be used to obtain discovery for use in "criminal investigations conducted before formal accusation", and courts in this district have confirmed the availability of Section 1782 for such criminal investigations.  28 U.S.C. § 1782(a); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (granting 1782 application for use in contemplated criminal proceedings abroad).  Thus, the Contemplated English Proceedings plainly qualify as foreign proceedings under Section 1782.

Petitioner is not required to show that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, Petitioner only needs to show that he has "the *practical ability* . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017).

Here, Petitioner plainly satisfies this requirement. The information sought in the Subpoenas is highly material to the contemplated civil and criminal proceedings. Petitioner will be able to use and introduce the information to plead and prove his claims against the Forger.[68]

### 3.     Petitioner Is An "Interested Person."

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s] who may invoke § 1782." *Intel Corp. v. Advanced Micro Devices,*

---

[68]   Watson Decl. ¶¶37-38; Macdonald Decl. ¶¶34-35.

*Inc.*, 542 U.S. 241, 256 (2004).  Petitioner will be a party to the Contemplated English

Proceedings and is therefore an "interested person" under Section 1782.[69]

### C.     All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks.

Once the threshold requirements under section 1782 are met, the Court should

consider the four discretionary "*Intel* factors."  Each of these factors weighs in  favor of

granting the requested discovery here.

*First*, Respondents will not be parties to the Contemplated English Proceedings.

*Second*, there is no reason to believe that English courts would be unreceptive to evidence

obtained through Section 1782 discovery.   *Third*, Petitioner is acting in good faith and is

not seeking to avoid any foreign restriction on gathering evidence.   *Fourth*, Petitioner's

single document request is carefully circumscribed and targeted to key facts so as to avoid

undue burden on Respondents.

### 1.     The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a

party to the foreign proceeding.  "[W]hen the person from whom discovery is sought is a

participant in the foreign proceeding  . . . the need for § 1782(a) aid generally is not as

apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter

---

[69]   With regard to the Contemplated Criminal Proceedings, if a public prosecution is elected, Petitioner qualifies as an "interested person" as a victim and aggrived party of the crime.  *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) ("[A] complainant in a criminal investigation satisfies the "interested person" requirement of § 1782."); *In re Ex Parte Application of SERETM*, 2013 WL 6141655, at *1 (N.D. Cal. Nov. 21, 2013) (holding that a victim of fraud is an interested person under Section 1782).  Indeed, Petitioner will have the practical ability to introduce evidence concerning the identity of the Forger regardless of which type of prosecution (private or public) is initiated.  Macdonald Decl. ¶¶31-35.

arising abroad." *Intel*, 542 U.S. at 264. Here, Respondents will not be a party to the Contemplated English Proceedings. Further, there is presently no other avenue for Petitioner to uncover the identity of the Forger or the distributors of the Forged Police Report.[70]

### 2. The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through section 1782. *See In re Application of OOO Promnesftstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"). There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

The English courts will be receptive to evidence obtained through this Application.[71] Petitioner will have the opportunity to use the information obtained in this

---

[70] Watson Decl. ¶37; Macdonald Decl. ¶¶34.
[71] Watson Decl. ¶¶39-42; Macdonald Decl. ¶¶36-41. At minimum, there is no authoritative proof that the English courts would reject the evidence obtained here.

Application in pleading his claims (i,e, in the complaint/claim form, and criminal complaint and/or criminal summons) as well as to prove its claims and enforce any remedies and/or sanctions.[72]

### 3.   The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad.  *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding.  As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first.  *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

---

[72]   Watson Decl. ¶¶37-38; Macdonald Decl. ¶¶34-35.

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy. Petitioner does not seek customer account information, state secrets, or attorney-client communications—he merely seeks information relating to the individual(s) who forged a police report with the goal of disseminating false information to harm Petitioner's reputation. The English jurisdiction does not have any law or public policy against such discovery. To the contrary, as the Declaration of Lord Macdonald of River Glaven Kt QC notes, it would be in the public interest to prosecute the Forger(s) of such a document.[73]

### 4.    The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the *single document* request is narrowly tailored, temporally limited, and directly relevant to the issues in the foreign proceedings. Whatever burden Respondents may incur by producing the requested discovery, it is both modest and proportionate given the circumstances. In any event, it is unclear what burden Respondents would avoid by witholding the identity of an individual that has engaged in intentional criminal and fraudulent conduct designed to perpetuate lies about the Petitioner.

---

[73]   Macdonald Decl. ¶30.

## III.     CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the *Ex Parte* Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas; and (d) grant any and all other relief to Petitioner as deemed just and proper.

Dated:  New York, NY
         August 6, 2018

Respectfully submitted,

/s/ Lucas V.M. Bento

Lucas V.M. Bento
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 MADISON AVENUE, FLOOR 22
NEW YORK, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Petitioner*